Michael R. Cepeda
Department of Corrections
Post 16, ACF, Mangilao, Guam
P.O. Box 3236
Hagåtña, Guam 96932
Telephone No. 734-3983

Plaintiff pro se



FILED
DISTRICT COURT OF GUAM
FEB 19 2008
JEANNE G. QUINATA
Clerk of Court

# IN THE UNITED STATES DISTRICT COURT
# FOR THE TERRITORY OF GUAM

| | |
|---|---|
| Michael R. Cepeda,<br><br>vs.<br><br>Jose B. Palacios, Acting Director, Department of Corrections, Government of Guam; Ronald S.N Santos, Parole Officer, parole Services Division, Department of Corrections; Michael Quinata, Chief, Parole Services Division, Department of Corrections; Jose Salas, a.k.a., J.Q. Salas, Chairman, Guam Parole Board, Department of Corrections; John or Jane Doe I-XX,<br><br>    Plaintiff,<br><br>    Defendants. / | CIVIL CASE NO. CIV 07-00033<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

**I. Analysis. A. Defendant's Grounds for Dismissal.** Defendants filed a motion to dismiss, "[p]ursuant to [F.R.Civ.P.] Rule 12(b)(1)" ("Rule 12(b)(1)"), based on two grounds. The first, is "the grounds (sic) that this court lacks subject matter jurisdiction." Motion to Dismiss, 1st [unnumbered] page. Id. The second ground states that "even if [the] court has jurisdiction, it may dismiss the case [for] it is moot." Id., 4th page.

**B. Court Has subject Matter Jurisdiction.** Rule 12(b)(1) provides that "a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction." A review of the applicable law clearly establishes that this Court has subject matter jurisdiction of plaintiff's causes complaint. The grant of such jurisdiction is found in 28 USC § 1331, "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." As demonstrated below, this Court has subject matter jurisdiction to adjudicate disputes in which violation of due process, accorded plaintiff by 48 USC § 1421b(u), is properly averred.

Plaintiff's sole authority for his proposition is Republican Party of Guam v. Gutierrez, 277 F.3d 1086 (9th Cir.2002). The decision in Republican Party turned on the fact that plaintiffs were not required to plead and prove any violation of federal law, in order to vindicate a legal right created by a statute that was enacted by the Guam Legislature[1]. In fact, the analysis turns on the federal doctrine of the well-pled complaint rule.

Looking only at the well-plead complaint, the case could be decided upon the validity of the facts supporting the local law cause of action. See, Republican Party, at 1091; accord, Scholastic Entertainment, Inc. v. Fox Entertainment Group, Inc., 336 F.3d 982, 987 (9th Cir. 2003) ("the well-pleaded complaint rule [provides] that federal jurisdiction exists only when a federal question is presented on the face of a properly pleaded complaint" (citations omitted)).

> What the plaintiffs have done is artfully plead the Governor's probable defense – that P.L. No. 25-146 is invalid under the Organic Act. However, on the face of the complaint, a court might never reach the Organic Act issue because the case could be decided upon the issue of whether the Governor violated P.L. No. 25-146; or, the Governor might not choose to raise the Organic Act issue at all. *** Looking only at the well-pleaded complaint, the case could be decided upon the validity of the facts supporting the state law cause of action.

Republican Party of Guam v. Gutierrez, supra, 277 F.3d, at 1091.

The relevant question in Republican Party (in relation to the case at bar) was: Whether, in order to vindicate their right under a locally enacted statute, must the plaintiffs plead and prove the asserted violation of federal law?

> The answer is "no." To vindicate the right created by P.L. No. 25-146 – the right to have the Governor appoint the Election Commission from those nominated by the recognized political parties of Guam – the plaintiffs need only plead that P.L. No. 25-146 exists and that the Governor failed to follow it, causing them actual or prospective injury. At most, the Organic Act would show that P.L. No. 25-146 is a

---

[1] The Republican Party decision first analyzes whether a federal court may determine whether the Guam legislature could lawfully enact a particular statute (P.L. No. 25-146), given the respective powers of the Governor and Legislature under the Organic Act. The Ninth Circuit answer is in the negative. See, Republican Party, supra, 277 F.3d, at 1089-90. Likewise, there is no federal question jurisdiction conferred by the fact that plaintiffs were seeking a declaration that the Governor failed to faithfully execute the laws of Guam, as required under the Organic Act. Id., 1090 ("There is no suggestion by the plaintiffs, or in the Organic Act itself, that the Governor's duty to enforce the laws of Guam creates an independent federal cause of action in favor of a plaintiff who alleges that a Guam law is not being enforced.") Those two aspects of the analysis are not at issue in this case.

valid law under that Act. [ ] While the Governor's duty to enforce P.L. No. 25-146 may be traced to the Organic Act's requirement that the Governor enforce the laws of Guam, this type of attenuated connection cannot support federal question jurisdiction. [ ] The most one can say is that a question of federal law is lurking in the background. A dispute so doubtful and conjectural, so far removed from plain necessity, is unavailing to extinguish the jurisdiction of the states. (Citations omitted; quotations truncated and quotation marks removed, punctuation altered.)

Republican Party of Guam v. Gutierrez, supra, 277 F.3d, at 1091.

Unlike the pleadings in Republican Party, where, plaintiffs artfully pled a probable defense under the Organic Act in order to assemble jurisdiction, the case before this Court is not some kind of pleading misdirection – contrary to the conclusory (and misleading) assertion by defendants ("[plaintiff's] bare jurisdictional reference to the Organic Act of Guam does not suffice to raise federal court jurisdiction[2]" – the complaint here is replete with straight-forward allegations, depicting violations of rights accorded plaintiff by 48 USC § 1421(b)(u), which is a federal statute extending to Guam residents the protection of certain elements of the Bill of Rights. See, Sampayan v. Mathews, 417 F.Supp. 60, 63 (D. Guam.1976) ("[The] right to due process under the law set forth in the Fifth and Fourteenth Amendments to the Constitution made applicable to Guam by 48 U.S.C. § 1421b(u) [1968].") Here are a few samples of plaintiffs pertinent averments:

> At a minimum, procedural due process requires, in the context of a hearing to set a parole date, that an inmate be afforded a notice of the hearing and an opportunity to be heard.
>
> As clearly evidenced by the exhibits ..., plaintiff's parole eligibility date was 12 March 2007. The express language of 9 GCA § 80.72(b), mandates: "The [Guam Parole] Board ***shall consider the desirability of parole of each inmate at least sixty ... days prior to his first eligibility***." (Emphasis added.) Accordingly, plaintiff was entitled to a parole hearing on or before ***11 January 2007***. However, a hearing was not scheduled. (Emphasis supplied.)

Complaint, ¶¶ 11-12, p.3.

> Despite his awareness of the failure to accord plaintiff procedural due process – as evidenced by his assiduous attempts to secure the waiver – Santos continued to withhold scheduling the hearing while persisting in his attempts to coax plaintiff to sign the waiver.

Id., ¶ 15, p.4.

Defendant Santos' failures, as enumerated above in ¶¶ 11-22, inclusive, worked to

---

[2] Motion to Dismiss, 2nd page.

Page 3 of 13

Case 1:07-cv-00033   Document 16   Filed 02/19/2008   Page 3 of 13

deprive plaintiff of a hearing, as such hearing was contemplated by the legislation providing therefor, in violation of his constitutional right, based on the Fourteenth Amendment to the U.S. Constitution and the Organic Act of Guam (48 USC § 1421b(u)) to procedural due process, and therefore significantly compromised his opportunity to be released on parole. Such conduct by Santos constituted atypical and significant hardship on plaintiff in relation to the ordinary incidents of prison life.

Id., ¶ 23, p. 6.

> Plaintiff is informed and therefore believes that defendant Salas, in his capacity as the chairperson of GPB, either knowingly or, alternatively, recklessly and in conscious disregard of his duty to plaintiff, failed to ameliorate the violations of plaintiff's constitutional and statutory rights to said procedural due process, as described in the foregoing paragraphs, and through such failure and disregard had perpetuated and intensified said violations. Such conduct was in clear derogation of Salas's duties as the GPB chairperson. Such conduct by Salas constituted atypical and significant hardship on plaintiff in comparison to the ordinary incidents of prison life.
>
> Defendant Salas' above-enumerated failures and disregard of his duties, as delineated above in ¶¶ 24-30, inclusive, worked to deprive plaintiff of a hearing, as such hearing was contemplated by applicable legislation, thus, in violating his Fourteenth Amendment's constitutional right to procedural due process (as applied through 48 USC § 1421b(u)), therefore, meaningfully compromising his ability to secure release on parole.
>
> Plaintiff was deprived of (i) his statutory rights to a timely notice; (ii) an opportunity to meaningfully prepare for the hearing, and (iii) a hearing, as such hearing was contemplated by the legislation providing therefor, in violation of his Fourteenth Amendment's constitutional right to procedural due process (as applied through 48 USC § 1421b(u)).
>
> Had the process been engaged in regularly and in accordance with applicable law and constitutional mandate, plaintiff chances of being released on parole would have been significantly enhanced. It was the responsibility of defendant Michael Quinata, as the Chief of Parole Division at the Department of Corrections, to insure that plaintiff's constitutional and statutory rights to procedural due process were upheld and sustained.
>
> Defendant Quinata should have had proper oversight of the Parole Services Division and its cadre of officers, and should have set in place procedures which would have insured that actions of its personnel are undertaken in conformity with their legal and regulatory duties to inmates, including plaintiff.
>
> In light of the applicable statutory provisions, defendant Quinata should have had in place a system of checks by which failures to timely schedule a parole hearing, failures to provide timely notices, failure to render an inmate reasonable aid in the preparation of his plan and failure to assist in securing information for submission to the Board, would be noticed in real time at or near their occurrence and ameliorated in a timely and meaningful manner, in order to uphold the procedural process due inmates by law and avoid harming PSD's clients, including plaintiff, when such failures precipitate deprivation of procedural due process and other constitutional violations of their rights.

Id., ¶¶ 30-35, pp. 8-9.

> [P]laintiff is informed and therefore believes that Quinata's acts and omissions, relevant to this particular case, were either intentional or were undertaken in conscious disregard of his duties to plaintiff. Such conduct by Quinata constituted atypical and significant hardship on plaintiff in comparison to the ordinary incidents of prison life.

Id., ¶ 36, p.9.

> Defendant Palacios ... has had an affirmative duty, based on the provisions of plaintiff's Fourteenth Amendment's right to (substantive) due process, to protect a citizen when that citizen is his custody, from deprivation of life, liberty or property. It is ultimately defendant Palacios' affirmative duty to insure that the institutional parole apparatus is being properly administered, and that plaintiff is provided with a fair opportunity to be released on parole.

Id., ¶ 37.

> Plaintiff, in his grievance complaint of 15 March 2007, observed that,
>
>> the government, and the individuals it employs in order to insure compliance with the attendant legal requirements, are intentionally withholding the notice and postponing the hearing even further, consciously, but with no justification, whatsoever.

Id., ¶ 38, p.10.

> Plaintiff's first cause of action, for declaratory relief, states:
>
> Based on the foregoing, plaintiff submits that he is entitled to a judicial declaration enumerating the violations of his procedural and substantive due process, and declaring the Parole Board Decision in Case No. CF370-00, dated 29 March 2007, void.

Id., ¶ 57, p.13.

> Plaintiff's second cause of action, for injunctive relief, states:
>
> Based on the foregoing, plaintiff submits that he is entitled to injunctive relief compelling DOC, through its director, defendant Palacios, to insure that plaintiff is provided with a proper notice, opportunity and assistance in preparation for his hearing, including the provision of proper assistance in the preparation of his parole plan and submission of information to the Board by impartial corrections officers; and to provide him with a fair and impartial hearing before an untainted Board.
>
> Plaintiff submits that he is also entitled to injunctive relief compelling Michael Quinata, the Chief of Parole Services Division at the Department of Corrections, to insure that plaintiff is provided with a proper notice, opportunity and assistance in preparation for his hearing, including the provision of proper assistance in the preparation of his parole plan and submission of information to the Board by impartial parole officers.

Id., ¶¶ 59-60, pp.13-14.

This juncture is where a the relevant question in <u>Republican Party</u> may be asked, again:

Page 5 of 13

Whether, in order to vindicate his right under a locally enacted statute, must the plaintiff plead and prove the asserted violation of federal law? In this case, clearly, the answer is, "yes." As is evident from the four corners of his complaint, plaintiff does allege causes of action arising under a federal statute, one in which the U.S. Congress had extended the constitutional right to (procedural and substantive) due process to him, as a resident of the unincorporated U.S. Territory of Guam.

A violation of the right to due process[3] clearly constitutes a federal question. McNary v. Haitian Refugee Center, Inc., 498 U.S. 479 (1991) is a case in point. The case relates to an amnesty program (known by its acronym, "SAW," standing for, "Special Agricultural Workers") created by Immigration Reform Act of 1986 (INA § 210) for illegal alien farmworkers. In INA § 210(e) Congress expressly limited the district courts' subject matter jurisdiction. INA § 210(e)(1) barred judicial review "of a determination respecting an application" by an amnesty applicant. Respondents, the Haitian Refugee Center and unsuccessful individual applicants, filed a class action in district court, alleging that the initial application review process was conducted in an arbitrary manner in violation of the Reform Act and applicants' due process rights under the Fifth Amendment.

The question before the court was whether the district court had federal question jurisdiction, despite the limit placed on such jurisdiction by Congress. Distinguishing respondents' allegations from a challenge to an individual determination of SAW status, the district court accepted subject matter jurisdiction, because the complaint contained allegations about the manner in which the entire program was being implemented. The court found that a number of INS practices violated the Reform Act and were unconstitutional. The Court of Appeals affirmed, as did the U.S. Supreme Court.

> We hold that given the absence of clear congressional language mandating preclusion of federal jurisdiction and the nature of respondents' requested relief, the District

---

[3] While McNary may be focused on procedural due process, plaintiff, mostly, alleges violation of his substantive due process rights by defendants. When the issue is the existence of federal question jurisdiction, there is no difference in the applicable analysis. Accord, e.g., Sandin v. Conner, 515 U.S. 472, 487 n.11 (1995)(prisoners retain protection from arbitrary state action even within the expected conditions of confinement).

> Court had jurisdiction to hear respondents' constitutional and statutory challenges to INS procedures. Were we to hold otherwise and instead require respondents to avail themselves of the limited judicial review procedures set forth in § 210(e) of the INA, meaningful judicial review of their statutory and constitutional claims would be foreclosed.

McNary, supra, 498 U.S., at 483-84.

McNary sharply illustrates plaintiff's basic position: There, Congress had specifically limited the reach of 28 USC § 1331. Nevertheless, the courts refused to extend the limitation beyond its literal, narrow definition; allowing the respondents to pursue relief for violations of procedural due process rights, effected in the administration of the program by INS officers. In this case, no limit was created by Congress on subject matter jurisdiction.

Plaintiff, like the respondents in McNary, alleges violation of his right to due process. He alleges the existence of substantive interest to which he has a legitimate claim of entitlement (cf., Olim v. Wakinekona, 461 U.S. 238, 250 (1983)), of which he was deprived by in the administration of the parole program by defendants. By analogy, plaintiff claims the right to use a paved highway, while defendants had relegated him to traverse a stretch of moors and bogs, instead. The claim at issue is that defendants' conduct had completely foreclosed his opportunity to be granted parole[4]. (See, e.g., Complaint, ¶ 21.) There is no argument that the law of Guam accords plaintiff such

---

[4] While this analysis is premature, it is worth mentioning, that though "procedural statutes and regulations governing parole do not create federal procedural due process rights" (see, e.g., Sweeton v. Brown, 27 F.3d 1162, 1164 (6th Cir.1994), procedural requirements create a liberty interest if they cause a "significant substantive reduction" in decision-making, or create an imperative that mandates action unless clearly defined exceptions are found applicable. Cf, Chaney v. Stewart, 156 F.3d 921, 925 (9th Cir. 1998). Plaintiff's assertion of a deprivation is derived from the denial certain rights (notice, opportunity to prepare for and assistance in preparation of a hearing, and a timely hearing), which had blocked any chance he would be granted parole, at the threshold. It is the conduct of defendants in blocking the procedural avenue, which is the crux of his complaint. For instance, 9 GCA § 80.72(b), mandates: "The Board shall consider the desirability of parole of each inmate at least sixty ... days prior to his first eligibility." This mandate, among others, was disregarded, thus leading to deprivation. The statute's mandate requires that a particular outcome will follow – not a release on parole – but a meaningful hearing where the prisoner has a fair opportunity to be heard and release is considered in accord with specific criteria (e.g., properly prepared parole plan). Cf., Kentucky Department of Corrections v. Thompson, 490 U.S. 454, 460-463 (1989).

opportunity (composed of several components, including preparation of a parole plan and a timely hearing, described with particularity in the Complaint). The deprivation of that opportunity eliminated any chance of securing release on parole, thus effecting a deprivation of procedural due process. The manner by which the deprivation was accomplished effected a deprivation of substantive due process.

Acceptance of defendants' contention, that this Court has no jurisdiction to entertain a complaint of violation of the right to due process, would result in foreclosure of the last available meaningful judicial review of plaintiff's claims. In McNary, the Supreme Court has clearly established that such draconian curtailment is unacceptable, save for explicit language by Congress to that effect.

Defendants argue that, "the issues raised in [plaintiff's] complaint are of local concern and should be heard, if anywhere, in [a] local court ...." Motion to Dismiss, 2nd page. Defendants, of course, are aware of the history of this dispute. Plaintiff can hardly be faulted for lack of trying to resolve it through alternative means: His administrative grievance was completely disregarded by the Department of Corrections (represented here by defendant Palacios), in clear derogation of applicable regulations (Executive Order 94-19 §§ 16.2.(D)(1)&(2); and16.3.) See, Complaint, ¶¶ 8-10, pp. 2-3. His attempt to litigate the matter in Guam's Superior Court had fared no better. See, id., ¶¶ 51-53, pp.12-13. Only when it became painfully clear that he will be allowed no other avenue for resolution of the dispute, did he opt, as a last resort, to have this Court settle the matter. Defendants' current attempt to muscle plaintiff out of this last resort for redress of their alleged wrongful actions and omissions, is as unconscionable as it is misguided.

Be that as it may, the applicable law, allows plaintiff to raise his concerns before *this* Court. "Liberty interests derive from both the Due Process Clause itself and the laws of the states." Kentucky Department of Corrections v. Thompson, 490 U.S. 454, 460 (1989). Liberty interests are not, necessarily, created by the Constitution. Rather, they may be created, and their dimensions defined by, existing norms, stemming from an independent source, such as state law that secure certain rights and support claims of entitlement to those rights. Cf., Arnett v. Kennedy, 416 U.S. 134, 152 (1974) (applying the same concept to property interest in the context of due process).

In essence, the wrongs alleged boil to conduct that imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life; and which were imposed in an arbitrary and capricious manner.

> States may in certain circumstances create liberty interests [accorded to inmates] that are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless ***imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life***. (Emphasis added.)

Sandin v. Conner, supra, 515 U.S., at 472.

Plaintiff, throughout his complaint explicitly alleges (and defendants do not dispute) that the conduct he is complaining of had imposed atypical and significant hardship on this inmate in relation to the ordinary incidents of prison life. See, e.g., Complaint ¶¶ 23, 30 & 36, supra. Moreover, it is clear from the facts presented in the complaint that defendants' conduct was arbitrary and capricious.

> Substantive due process claims are usually divided into two main categories: (1) claims asserting the deprivation of a particular statutory or constitutional right, privilege, or immunity, and (2) claims alleging an egregious, arbitrary abuse of government power that "shocks the conscience[5]." (Citing, Pusey v. City of Youngstown, 11 F.3d 652, 656-57 (6th Cir. 1993).)

Buchanan v. Apfel, 249 F.3d 485, 491 (6th Cir. 2001).

Plaintiff's complaint alleges both procedural and substantive due process deprivations. A review of the complaint discloses that he had alleged both species of substantive due process ((I) deprivation of a particular statutory or constitutional right; and (ii) egregious, arbitrary abuse of government power). Such allegation have always allowed federal courts to assume jurisdiction based on 28 USC § 1331. See, e.g., Carter v. Stanton, 405 U.S. 669, 670 (1972) (federal district Court had jurisdiction of action for declaratory and injunctive relief brought by plaintiffs contending that state welfare regulation contravened Fourteenth Amendment); Morrow v. Winslow, 94 F.3d 1386, 1394 (10th Cir. 1996) (district court had jurisdiction to hear Indian father's claims that state court adoption proceedings violated his due process rights); cf., Manufactured Home Communities

---

[5] The persistent attempts by defendant Santos to secure a waiver from plaintiff, while withholding scheduling a parole hearing already long overdue, is an example of alleged conduct that shocks the conscience. See, Complaint, ¶ 15 (quoted in p.3, supra).

Inc. v. City of San Jose, 420 F.3d 1022, 1032 n.13 (9th Cir. 2005) (certain counts at issue were of substantive due process, i.e., fair hearing, biased hearing officer, and arbitrary, capricious, and unreasonable burden).

**C. Defendants' Alternative Assertion of Mootness – Not Well-Taken. (1) Unwarranted Assumption.** The second section of defendants' motion states that "even if [the] court has jurisdiction, it may dismiss the case [for] it is moot[6]." Motion to Dismiss, 4th page. This statement makes it obvious that defendants' counsel had failed to research the issue he seeks to present to the Court, or even to think it through. He makes the allowance, for sake of his argument, that the Court has subject matter jurisdiction but nonetheless argues that dismissal is in order due to mootness.

The assumption, however, is wholly misplaced since "the question of mootness is a federal one which a federal court must resolve before it assumes jurisdiction (citation omitted)." DeFunis v. Odegaard, 416 U.S. 312, 316 (1974). See also, Shockley v. University of Texas Medical Branch, Slip Copy, 2007 WL 1976460, *3 (N.D.Tex.,2007) (a motion to dismiss on the grounds that a claim is moot may be brought under Rule 12(b)(1) for lack of subject matter jurisdiction (numerous citations omitted).

Note, that a motion to dismiss – which assumes the existence of subject matter jurisdiction – is, perforce, a Rule 12(b)(6) motion. In light of the fact that defendants seek to have the Court look beyond the pleadings in evaluating a motion to dismiss, the motion would therefore have been treated as one for summary judgment, under Rule 56. See, Grove v. Mead School Dist. No. 354, 753 F.2d 1528, 1532-33 (9th Cir. 1985) (when parties submitted and court considered matters outside of the pleadings, court would treat a motion to dismiss as a motion for summary judgment). The same is not true if defendants' assumption is not infixed. See, Bischoff v. Osceola County, Fla., 222 F.3d 874, 878 (11th Cir. 2000) (a motion to dismiss brought pursuant to Rule 12(b)(1) does not convert into a motion for summary judgment simply because the court looks beyond the pleadings; instead, the district court may, within the scope of a Rule 12(b)(1) proceeding, initiate a factual inquiry).

---

[6] Defendants' counsel cites Mills v. Green, 159 U.S. 651 (1895) in support of his confused assertion. A review of the case clearly shows that the citation is grossly inaccurate. In fact, as will be demonstrated below, the language of the case supports plaintiff's argument.

Page 10 of 13

Defendants' counsel loose and thoughtless formation of the argument necessitated a great deal of time and effort by plaintiff, simply in order to – correctly – conceptualize, reformulate and articulate the issues in need of examination, before even initiating his response.

> A brief is not to be a document thrown together without either organized thought or intelligent editing on the part of the brief-writer. Inadequate briefing is not, as any thoughtful lawyer knows, helpful to either a lawyer's client or to the Court. (Citing Frith v. State, 263 Ind. 100, 325 N.E.2d 186, 189 (1975).)

Keeney v. State, 873 N.E.2d 187, 189-90 (Ind.App. 2007)

**(2) Misdirection.** From loose thinking, defendants' counsel graduates to a fast and loose exercise. In support of his argument, that the complaint is moot, defendants make a factual representation, as follows: "Cepeda was thereafter afforded *another* parole hearing, in October of 2007, and he has raised no complaints about that one[7]." (Emphasis added.) Id. Based on these purported facts (which are not offered as being undisputed), an unsubstantiated legal conclusion is presented, to wit: "A *re-scheduled*, complaint-free parole hearing would probably be the remedy plaintiff Cepeda would be entitled to even if this court were to accept jurisdiction and rule in ... Cepeda's favor." (Emphasis added.) Id.

By advancing this argument defendants' counsel resorts to misdirection. He contents, in effect, that a re-scheduled parole hearing is (probably) the sole remedy to which plaintiff would be entitled. Yet the evidence he submit is not of a re-schedule hearing but of "another parole hearing." Hence, even if his unsubstantiated claim is correct, no such remedy was in fact afforded plaintiff in this case. Such misdirection is inappropriate. Accord, Hershey v. Praxair, Inc., 948 F.Supp. 29, 31 (S.D.Tex.,1996) (defendant's statement ruled misleading, and counsel cautioned to avoid such unfounded statements in future pleadings).

**(3) No Legal Support.** The court is asked to grant dismissal of plaintiff's causes of action, based on a contrived legal principle: "A re-scheduled, complaint-free parole hearing would probably be the remedy plaintiff Cepeda would be entitled to ...." The lack of any authority for this

---

[7] Defendants' content that since they had arranged for another hearing all the procedural due process defects have magically disappeared. They fail to even allege, however, that, for example, opportunity to prepare and assistance in preparation for said hearing were provided prior thereto.

Page 11 of 13

Case 1:07-cv-00033  Document 16  Filed 02/19/2008  Page 11 of 13

conclusion indicates that defendants' able counsel was able to find none. Accordingly, the argument may be considered by the Court to have been waived. Cf., U.S. v. Watson, 189 F.3d 496 (7th Cir. 1999) (appellant who did not adequately developed or supported his arguments caused them to be waived).

**(4) Not the Probable Outcome in This Case.** Note, that after assembling their novel theory, defendants had inserted the word 'probably.' However, defendants' self-serving assessment, that their newly devised theory would be the probable outcome of the litigation – as opposed to, for instance, a mere possible one – cannot be sustained. In addition to the lack of any basis in jurisprudence, there is neither logical nor analytical footing, certainly none defendants are willing to share with the Court through their moving papers, to substantiate their conclusory assertion. Ironically, it is a case cited by defendants, Mills v. Green, supra, 159 U.S. 651, which negates their argument. The case provides the following analysis:

> If a defendant, indeed, after notice of the filing of a bill in equity for an injunction to restrain the building of a house, or of a railroad, or of any other structure, persists in completing the building, the court nevertheless is not deprived of the authority, whenever, in its opinion, justice requires it, to deal with the rights of the parties as they stood at the commencement of the suit, and to compel the defendant to undo what he has wrongfully done since that time, or to answer in damages. (Citations.) But if the intervening event is owing either to the plaintiff's own act, or to a power beyond the control of either party, the court will stay its hand.

Id., at 654.

In his complaint plaintiff alleged:

> Based on his familiarity with the inner machinations at DOC, plaintiff [had] anticipated that his refusal to execute the waiver sought by Santos (citing, Complaint, ¶¶ 14-15, supra) that the parole board will deny him parole, "simply in order to show that he did not suffer any harm as a result of the violations of his legal rights" (citing id., ¶ 39, infra). It is for that precise reason that, already in his grievance complaint, plaintiff sought to insure that "a fair and impartial parole board be constituted for his parole hearing." (Citing, id., ¶ 42(f), infra.) However, subjective factors used to deny plaintiff's parole should be eliminated from consideration in evaluating his claim that Santos' and others' failure to assist him significantly reduced his chances of securing release on parole.

Complaint, ¶ 21 n.2, p.6.

Defendants fail to explain how a subsequent hearing had cured the structural flaws in the process, identified in plaintiff's complaint. Nor do they allege that some intervening event, "owing either to the plaintiff's own act, or to a power beyond the control of either party," which would truly

Page 12 of 13

1 | render the matter moot, for instance, the release of plaintiff from incarceration.

2 | More fundamentally, the moving parties failed to outline any applicable legal theory, nor delineate its constituent elements, on the basis of which they would have asserted that the sole available remedy is a re-scheduled hearing, entitling them to dismissal. It is indeed mind-boggling that defendants are able to ascertain what is ("probably") the sole remedy without, first, conceptualizing the legal theory to which the remedy is applicable. Only by presenting the legal theory which is the basis for determination, can one then configure which remedies are applicable.

In reality, of course, the case before the Court is far from being moot.

> A case is moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome. (Citing, County of Los Angeles v. Davis, 440 U.S. 625, 631, (1979) (internally quoting, Powell v. McCormack, 395 U.S. 486, 496 (1969)). The underlying concern is that, when the challenged conduct ceases such that there is no reasonable expectation that the wrong will be repeated (citing, United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953)), then it becomes impossible for the court to grant any effectual relief whatever to the prevailing party (citing, Church of Scientology of Cal. v. United States, 506 U.S. 9, 12 (1992) (internally quoting, Mills v. Green, 159 U.S. 651, 653 (1895)). In that case, any opinion as to the legality of the challenged action would be advisory. (Quotation marks and brackets removed; punctuation slightly altered.)

City of Erie v. Pap's A.M., 529 U.S. 277 (2000).

There is no reason for the Court to conclude, at least at this stage of the litigation, that the conduct challenged by plaintiff in his complaint had ceased, and that there is no reasonable expectation that the wrongful conduct averred will be repeated. Defendant's strategy is to sweep the thorny issues raised by the complaint under the carpet. However, there is nothing before the Court which would allow it to conclude that a mere procedural gesture, conducting another hearing, had solved any problem.

**III. Conclusion.** For the foregoing reasons, defendants' motion to dismiss should be denied.

Dated: February 14, 2008.

Respectfully Submitted,

_Michael Cepeda_
Michael R. Cepeda, Plaintiff pro se